In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________


 

No. 06-07-00153-CR


______________________________




STEPHEN OWEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


 Cass County, Texas


Trial Court No. CCLM050398




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Stephen Owen's relationship with Patricia Reynolds had deteriorated. In the aftermath of that
deterioration, Owen placed multiple telephone calls to the residence of Wilhelmine Hill, Reynolds'
mother. The purpose of those calls was the principal dispute at Owen's jury trial for harassment (by
telephone), a class B misdemeanor. See Tex. Penal Code Ann. § 42.07 (Vernon 2003). Owen was
convicted and sentenced to six months' confinement in the county jail, probated for two years.

 On appeal, he contends that the evidence is legally and factually insufficient to support the
verdict and that the trial court erred by admitting into evidence letters Owen sent Reynolds. We
affirm the trial court's judgment because we conclude that (1) legally and factually sufficient
evidence supports the conviction and (2) any error in admitting the letters into evidence has not been
preserved.

(1) Legally and Factually Sufficient Evidence Supports the Conviction

 A person commits the offense charged if, with intent to "harass, annoy, alarm, abuse, torment,
or embarrass another, he . . . causes the telephone of another to ring repeatedly or makes repeated
telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm,
abuse, torment, embarrass, or offend another." See Tex. Penal Code Ann. § 42.07(a)(4).

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The State alleged that Owen made repeated calls to Hill with intent to "harass, annoy, alarm,
abuse, torment and embarrass" her. Hill testified that Owen telephoned her a number of times in a
very short period of time, that she warned him to stop calling her, and that he continued making the
calls.

 Owen acknowledged that the telephone calls had occurred, but argued that they were not
harassment. He asserts that he identified himself when he called, he made no attempt to disguise his
identity, he made no threats, and no violence occurred. He also pointed out that the calls were very
short and occurred during the day. In a related sufficiency argument, Owen also argues that the
evidence was insufficient to identify him as the actor who committed the offense.

 Hill testified that numerous calls were made during a short period of time; that during some
calls there was a verbal exchange, while in others there was not; and that, on one occasion, Owen
disguised his voice and identified himself as a "Sergeant Culpepper" from Fort Worth, looking for
Reynolds to serve an arrest warrant on her. At that time, Reynolds was at Hill's house. When Hill
handed her the telephone, Reynolds recognized Owen's voice and hung up. There was also
testimony from Reynolds quoting Owen as saying that he would keep calling her (while she was at
her mother's house) until her mother had a heart attack and that "it's going to be my [Reynolds'] fault
that she's dead because I won't talk to him." Hill testified that she was seventy-four years old and
that the calls upset her and made her afraid.

 Reynolds testified that she recognized Owen's voice on the telephone, even though he
attempted to disguise it. The State also introduced business records from the telephone company
listing calls from Owen's telephone to Hill's telephone on the date and at the time of day when the
calls were made.

 Here, there is evidence that, if believed by the jury, is sufficient to support its conclusion that
Owen's purpose in making the telephone calls was harassment. There is also evidence about the time
and date on which the calls to Hill's residence were made. Some of those calls were answered, and
Owen was identified as the caller. Although others were unanswered, telephone records in evidence
show calls made from Owen's telephone to Hill's telephone at the relevant times. Unlike a more
typical case in which there is no direct evidence of intent, in this case there is also testimony from
which a jury might conclude that Owen intentionally made the calls for the purpose of disturbing the
recipient, even to cause her an injury as a result. This is the very meaning of harassment. 
Admittedly, there is also evidence from which a fact-finder could conclude that Owen's main intent
was to attempt to convince Hill to let him talk to Reynolds or to tell him where she was.

 The jury fulfilled its function by deciding the matter based on partially conflicting evidence. 
There was both legally and factually sufficient evidence to support its verdict--and that evidence
is not outweighed by any great weight and preponderance of contrary evidence, such that the jury's
verdict is clearly wrong or manifestly unjust. The evidence was legally and factually sufficient to
support the conviction.

(2) Any Error in Admitting the Letters into Evidence Has Not Been Preserved

 Owen also contends the trial court erred by admitting into evidence letters he sent Reynolds. 
Although the argument under this issue is not entirely clear, it appears that Owen's major complaint
is that those letters were irrelevant to this prosecution. Counsel specifically refers to exhibits two
and three. Those two exhibits were admitted without objection. The complaint now brought before
this Court was not preserved for our review. See Tex. R. App. P. 33.1. We overrule this contention
of error.






 We affirm the judgment.






 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 3, 2008

Date Decided: March 4, 2008


Do Not Publish



ide whether Paula Cochran and Dwane Eric Hotz are
entitled to current possession of H.H.H., their newborn daughter and Cochran's tenth child, pending
a final hearing on termination of their parental rights to H.H.H. Our decision turns on whether the
proof of prior, for-cause terminations of Cochran's and Hotz's parental rights to their other children,
essentially standing alone, satisfies Section 262.201(b) of the Texas Family Code and thus allows
the State, acting through the Texas Department of Family and Protective Services (the Department),
to withhold current possession of H.H.H. from her parents. See Tex. Fam. Code Ann. § 262.201(b)
(Vernon 2002). Though, from their past record as to their other children, Cochran and Hotz may
pose a risk to H.H.H., we hold that risk is not a sufficient statutory basis, and the proof in this case
does not meet the high statutory requirements, to allow the Department to deny Cochran and Hotz
present possession of H.H.H. We conditionally grant the writ of mandamus.
Historical Perspective
            To understand the present situation, we must review Cochran's and Hotz's history with the
Department. In 2002, Cochran's rights to her first eight children were terminated when the trial court
concluded (1) that she had (a) placed or knowingly allowed her children to be placed or remain in
conditions or surroundings which endangered the physical or emotional well-being of the children,
and (b) engaged in conduct, or knowingly placed children with a person or persons who engaged in
conduct, which endangered the physical or emotional well-being of the children, and (2) that
termination was in the children's best interests. See Tex. Fam. Code Ann. § 161.001(1)(D), (E)
(Vernon 2002). With respect to two of the eight children who were the subjects of the 2002
terminations, Hotz was the biological father; his parental rights were also terminated. 
            In 2003, Cochran's and Hotz's parental rights to Cochran's ninth child, born after the previous
terminations, were terminated when the trial court found by clear and convincing evidence that,
among other things, the parents "knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endangered the physical or emotional well-being of the child." 
            H.H.H., the child in question here, was born June 6, 2004, at home, her delivery attended by
a midwife. On June 11, acting on a hotline tip, Bob Alexander, a Department caseworker, visited
the family and found H.H.H. in relatively good health, having only a mild skin rash. But, because
of the parents' history, the Department removed H.H.H. from the home that day. On June 14, the
Department filed a petition to terminate the parental rights of Cochran and Hotz. 
            On June 23, 2004, as mandated by the Texas Family Code, the trial court held a "14-day
hearing" during which Alexander testified regarding his observations made at the home. He noted
his concern that H.H.H. had not been to the doctor yet, but admitted she appeared to be in generally
good health. There were no signs that H.H.H. had been physically or sexually abused or that she had
been neglected. On direct examination, Alexander conceded that "risk," based on the prior
terminations, had "a large bearing" on the departmental decision to seek termination of Cochran's
and Hotz's parental rights. At the end of this hearing, the trial court expressed its concerns regarding
the gravity of this case and facilitated the bringing of Relators' petition in order to clarify this issue. 
It then entered the temporary order forming the basis of this petition, denying Cochran and Hotz
possession of H.H.H. The trial court also entered the following written findings:



Having examined and reviewed the evidence, including the sworn affidavit
accompanying the petition and based upon the facts contained therein, the Court finds
there is sufficient evidence to satisfy a person of ordinary prudence and caution that:
(1) there was a danger to the physical health or safety of the child which was caused
by an act or failure to act of the person entitled to possession and for the child to
remain in the home is contrary to the welfare of the child; based only on the past
conduct of Paula Cochran and Dwane Eric Hotz as shown by the Judgment in Cause
30,014 in the District Court of Titus County, Texas on March 13, 2003 . . . and the
Judgment in Cause FM 005744 in the 353rd Judicial District Court in Travis County,
Texas and; (2) the factual urgency for protection requiring the immediate removal of
the child is inferred from Exhibits A and B of this order and; (3) that under the
circumstances the Texas Department of Family is not required to attempt
reunification and that there is a substantial risk of continuing danger if the child is
returned home . . . .
 
The Court finds with respect to the child . . . that reasonable efforts consistent with
the child's health and safety are not required to be made by the Department to prevent
or eliminate the need for removal of the child from the home and to make it possible
for the child to return home, and that continuation in the home would be contrary to
the welfare of the child. 





 
Mandamus Conditionally Lies Because of Lack of Proof of Any Act or Failure to Act by Cochran
or Hotz that Endangered H.H.H.

            Mandamus is "an extraordinary remedy, available only in limited circumstances." Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue
"only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is
no other adequate remedy by law." Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985) (orig. proceeding). The appellate court must determine whether there has been a clear abuse
of discretion that justifies mandamus relief. Id.
            Mandamus is available only in the absence of a factual dispute of consequence. Walker, 827
S.W.2d at 839–40. The trial court does not abuse its discretion when its judgment is based on
conflicting evidence and some of this evidence reasonably supports the court's decision. Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002). If a relator seeks to overrule a court's decision
based on factual issues or matters committed to the trial court's discretion, he or she has the burden
to show that the trial court could have reached only one decision on the facts. Walker, 827 S.W.2d
at 839–40.
            We first turn to the governing statute to determine what must be proven to deny a parent
possession of his or her child.


 Section 262.201 of the Texas Family Code provides for a "14-day
hearing" at the end of which the trial court must order the return of a child to its parents, absent
certain findings:
(b) At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession unless the court
finds sufficient evidence to satisfy a person of ordinary prudence and caution
that:
 
(1) there was a danger to the physical health or safety of the
child which was caused by an act or failure to act of the
person entitled to possession and for the child to remain in the
home is contrary to the welfare of the child;
 
(2) the urgent need for protection required the immediate removal of
the child and reasonable efforts, consistent with the circumstances
and for the safety of the child, were made to eliminate or prevent the
child's removal; and
 
(3) reasonable efforts have been made to enable the child to
return home, but there is a substantial risk of a continuing
danger if the child is returned home.
Tex. Fam. Code Ann. § 262.201(b). We will address those subsections in reverse order.
            The trial court is given some discretion over the findings specified by Section 262.201(b)(3):
"The court may waive . . . the requirement to make reasonable efforts to return the child to a parent
. . . if the court finds that the parent has subjected the child to aggravated circumstances." Tex. Fam.
Code Ann. § 262.2015(a) (Vernon 2002). Section 262.2015 goes on to authorize the trial court to
find that a parent has subjected the child to aggravated circumstances if "the parent's parental rights
with regard to another child have been involuntarily terminated based on a finding that the parent's
conduct violated Section 161.001(1)(D) or (E) . . . ." Tex. Fam. Code Ann. § 262.2015(b)(5)
(Vernon 2002). Those conditions were met here. Since both prior terminations were based on
findings that the parents either "knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being of the child" or
"engaged in conduct or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child," both terminations qualify as
"aggravated circumstances." See Tex. Fam. Code Ann. § 262.2015(b); see also Tex. Fam. Code
Ann. § 161.001(1)(D), (E). The trial court was well within its discretion in finding that there was
no need for the Department to make reasonable efforts to return the child. Therefore, we will not
issue a writ of mandamus based on the trial court's finding under Section 262.201(b)(3).
            Subsection (2) arguably allows the trial court to exercise its discretion in finding what efforts
were reasonable in any given case by requiring it to find that "reasonable efforts, consistent with the
circumstances and for the safety of the child, were made to eliminate or prevent the child's removal." 
Tex. Fam. Code Ann. § 262.201(b)(2) (emphasis added). The plain language of this provision
allows some flexibility in the trial court's determination of what efforts, if any, were reasonable in
the given circumstances. Therefore, we also decline to issue a writ of mandamus with respect to the
trial court's finding under Section 262.201(b)(2) of the Texas Family Code.
            We therefore turn to the trial court's finding that there was a danger to the physical health or
safety of the child caused by an act or failure to act by the parents under Section 262.201(b)(1). The
record before us does not support that finding.
            H.H.H. was born June 6, 2004. The two pre-existing orders of termination were entered 
September 6, 2002, and March 13, 2003, respectively. Thus, the conditions, acts, or omissions
forming the bases of those terminations occurred at least fourteen months


 before H.H.H. was born
and, obviously, could not have posed a danger to her. In the absence of any current conditions or
actions that would constitute a danger to H.H.H.'s health or safety, the trial court could not have
reasonably based its findings on the prior terminations alone. We conclude that the trial court could
not have found that the parents' prior terminations were acts or omissions under Section
262.201(b)(1) of the Texas Family Code which posed a danger to H.H.H. when the conduct resulting
in the prior terminations was committed before her conception.
            When conducting an abuse of discretion review, we examine the entire record. 
Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996); Land v. AT & S Transp.,
Inc., 947 S.W.2d 665, 667 (Tex. App.—Austin 1997, no writ). So, while the trial court's written
order is unclear in that it states that it "examined and reviewed the evidence, including the sworn
affidavit accompanying the petition," but also states that subsequent findings were based only on
evidence of prior terminations, we are to examine all the evidence in the record before us to
determine whether the trial court abused its discretion. Other evidence in the record, like the
evidence of prior terminations, simply does not illustrate that an act or failure on the part of the
parents posed a danger to H.H.H.'s physical health or safety.
            In fact, the evidence before us indicates that, aside from a skin rash and a couple of skin
pustules, H.H.H. was in good health. Alexander testified the doctor's visit did not yield any major
health concerns. Additionally, we are not prepared to say that evidence Cochran gave birth at home
with the aid of a midwife constituted an act or failure to act which posed a danger to H.H.H.'s
physical health or safety. While there is arguably some concern that H.H.H. had not been to a doctor
since her birth five days earlier, we know from Alexander's testimony regarding H.H.H.'s health and
the results of her subsequent doctor's visit that this omission had not posed any known danger to
H.H.H. Additionally, Alexander testified that Cochran had indicated that H.H.H. had a doctor's
appointment on the Monday following the Friday on which the Department removed her. 
            Relators have shown that, on this evidence, the trial court could have come to only one
reasonable conclusion, that the Department failed to show that an act or failure to act by Cochran or
Hotz posed a danger to the physical health or safety under Section 262.201(b)(1) and that present
possession of H.H.H. should have been returned to her parents as required under Section 262.201(a). 
Accordingly, we conditionally grant Cochran and Hotz's petition for writ of mandamus and direct
Respondent, the Honorable William C. Martin, III, to vacate his Temporary Order Following
Adversary Hearing signed June 23, 2004, and order the return of the present possession of H.H.H.
to her parents. The writ will issue only if Respondent fails to comply within ten days of this order.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 29, 2004
Date Decided:             November 30, 2004